**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JANE DOE, et al.,**

**Plaintiffs,**

**v.**

**Case No. 2:20-cv-4467**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Kimberly A. Jolson**

**NELSONVILLE-YORK SCHOOL DISTRICT BOARD OF EDUCATION,**

**Defendant.**

**OPINION AND ORDER**

This matter is before the Court on Defendant's Motions for Summary Judgment on Plaintiff N.F.'s claims (ECF No. 12) and Plaintiff R.S.'s claims (ECF No. 13). Plaintiffs filed a response in opposition to both motions (ECF No. 20), and Defendant replied (ECF No. 23). For the reasons set forth below, the Court **GRANTS** Defendant's motions.

**I. Background**

Plaintiff, R.S., is a 16-year-old student at Nelsonville York High School. (Withrow Decl. ¶ 3, ECF No. 20-1.) She alleges that she was bullied at school for having Attention Deficit Disorder, Mild Intellectual Disability, Depressive Disorder, and Anxiety. (*Id.* ¶ 5.) According to Plaintiff, her grandmother and legal guardian notified high school administrators, including the Director of Special Programs, the District Secretary, and R.S.'s Case Manager, that R.S. was bullied at school because of her intellectual disability. (*Id.* ¶ 6.) One student in particular, A.R., called Plaintiff "retarded" multiple times. (*Id.* ¶ 11.)

On October 25, 2019, when R.S. was 14 years old, she interceded on a school bus fight. As shown in the video recording, R.S. saw A.R. confronting another student on the back of the bus.

R.S. stood up from her seat and walked to the back of the bus to where A.R. was yelling at another student. A.R. started yelling at R.S. and punched her in the face multiple times. (*See* Order Granting Leave to File Video, ECF Nos. 10–11.) A.R. was criminally charged for attacking R.S. on the bus. R.S. obtained a no-contact order against A.R. (*Id.* ¶ 17.) R.S.'s grandmother avers that there are three videos on Facebook of A.R. beating up other children. (*Id.* ¶ 12.) R.S.'s grandmother claims that no one at Nelsonville-York School District took substantial steps to address her concern about bullying prior to the October 25, 2019 incident. (*Id.* ¶ 15.)

Plaintiff, N.F., is an elementary school student at Nelsonville-York Elementary School and has ciliary dyskinesia and a genetic disorder which causes mental and physical delays. (Fox Decl. ¶ 3, ECF No. 20-2.) Because of his disabilities, N.F. is small for his age and wore a diaper while he attended kindergarten. (*Id.* ¶¶ 4–5.) According to N.F.'s father, N.F. was bullied at school. (*Id.* ¶ 6.) N.F. suffered a serious head injury, a broken arm, and often came home with black eyes. (*Id.* ¶ 7.) N.F.'s father asked N.F.'s kindergarten teacher if the school could provide a personal aid to watch N.F. during recess and during transitions between classes, but the school allegedly refused. (*Id.* ¶¶ 8–9.) After N.F. received arm and head injuries in first grade from being pushed into a wall, his father asked again for a personal aid. (*Id.* ¶¶ 10–11.) The school principal thereafter assigned a personal aid to accompany N.F. during classroom transitions and on the playground. (*Id.* ¶¶ 12–13.) In 2018, when N.F. was in second grade, the school did not reassign a personal aid and allegedly told N.F.'s father that it was too expensive to continue. (*Id.* ¶¶ 15, 17.) N.F. received multiple injuries during recess including a black eye and a concussion that has caused permanent injuries. (*Id.* ¶ 14.)

On August 28, 2020, Plaintiffs R.S. and N.F. filed a complaint against the Nelsonville-York School District under Section 504 of the Rehabilitation Act of 1973, Title II of the Americans

with Disabilities Act ("ADA"), 42 U.S.C. § 12131 et seq, Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., a *Monell* claim under 42 U.S.C. § 1983, and Ohio law negligence/gross negligence claims. (*See generally* Compl., ECF No. 1.) On October 29, 2021, Defendant filed two motions for summary judgment. The motions are ripe for review.

## II. Standard of Review

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## III. Analysis

Defendant moves for summary judgment on the grounds that Plaintiffs failed to exhaust their administrative remedies under the IDEA and failed to provide sufficient facts in support of their claims. (ECF No. 12 at 2; ECF No. 13 at 2.)

Plaintiffs contend that the instant motions should be construed as motions to dismiss because Defendant's arguments are similar to a Fed. R. Civ. P. 12(b)(6) motion. Defendant responds, and the Court agrees, that this is a proper motion for summary judgment. The discovery period of the case is closed and the motion was filed on the deadline for dispositive motions. (*See* Scheduling Order, ECF No. 6.)

### A. Exhaustion of Administrative Remedies

Defendant first argues that Plaintiffs' entire action is barred because they did not exhaust their administrative remedies under the IDEA. The IDEA ensures that students with disabilities have access to a "free appropriate public education" ("FAPE"). 20 U.S.C. 1412(a)(1). If a school does not provide educational services tailored to disable students' needs, parents can seek redress under the IDEA. *Fry v. Napoleon Comm. Schs.*, 137 S.Ct. 743 (2017). Before filing an IDEA lawsuit in court, parents must exhaust administrative remedies by meeting with the school, engaging in mediation, and bringing their case to an impartial "hearing officer." 20 U.S.C. 1415(b)(f), (g)(1), (i)(2)(A).

If the lawsuit is not expressly brought under the IDEA, it may still be subject to the IDEA exhaustion requirements if it "seek[s] relief that is also available under [the IDEA]." 20 U.S.C. 1415(l). Courts should look past "artful pleading" and ask whether the gravamen of the action is the denial of FAPE. *Fry*, 137 S.Ct. at 755.

In their response in opposition, Plaintiffs voluntarily dismiss their IDEA claims and clarify that they seek monetary damages for physical injuries rather than FAPE. (ECF No. 20 at 4.) Defendant insists that the gravamen of the lawsuit still seeks FAPE and therefore the Plaintiffs remain subject to IDEA exhaustion requirements, which they did not exhaust in this case.

In a recent Sixth Circuit case, the plaintiff settled his IDEA claim with the defendant and later filed ADA and state law claims in federal court. *Perez v. Sturgis Pub. Schs.*, 3 F.4th 236 (6th Cir. 2021). The court found that IDEA exhaustion requirements still applied because the plaintiff "did not forgo his IDEA claim altogether" and his complaint still "focus[ed] on the adequacy of his education." *Id.* at 240-41.

Here, Plaintiffs forgo their IDEA claims altogether and retracts their requests for remedies related to FAPE and loss of educational opportunities. (*See* Compl. ¶¶ 56, 64, 69, 72, 75 noting loss of educational opportunities.) The Complaint's introduction states that "[t]his is a suit for damages and not for prospective relief" because Plaintiffs suffered "lifelong physical and psychological injuries" as a result of Defendant's alleged negligence and deliberate indifference to the peer-on-peer harassment. (*Id.* at 2.) Plaintiffs remaining injuries include "extreme emotional distress, [and] physical distress." (*Id.* ¶¶ 56, 64, 69, 72, 75.) Reading the Complaint in the light most favorable to the non-moving party, the Plaintiffs, and drawing all reasonable inferences in their favor, the Court finds that the gravamen of the Complaint is relief for Plaintiffs' emotional and physical harm. Plaintiffs are not subject to the IDEA exhaustion requirements because they dismissed their IDEA claim and contend that they no longer seek relief for loss of educational opportunities.

### B. Plaintiffs' Claims

#### 1. Rehabilitation Act and Americans with Disabilities Act Claims

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. 794(a). In sum, both Acts allow disabled individuals to sue school districts that discriminate against them because of their disability or fail to protect them from discrimination. *Gohl v. Livonia Pub. Schs. Sch. Dist.*, 836 F.3d 672, 681 (6th Cir. 2016). Given the similarities in the two statutes, courts merge the analyses under the ADA and Rehabilitation Act." *Qiu v. Univ. of Cincinnati*, 803 F. App'x 831, 836 (6th Cir. 2020).

To establish that a school is liable for disability-based peer-on-peer harassment, a student must show that (1) he was an individual with a disability, (2) he was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) the school knew about the harassment, and (5) the school was deliberately indifferent to the harassment. *S.S. v. Eastern Kentucky Univ.*, 532 F. 3d 445, 454 (6th Cir. 2008).

The Court will address Plaintiff N.F. and Plaintiff R.S.'s ADA and Rehabilitation Act claims separately.

**a. Plaintiff N.F.**

Defendant argues that Plaintiff N.F.'s ADA and Rehabilitation Act claims do not survive summary judgment because there is insufficient evidence that students harassed N.F. because of his disability or that the school was deliberately indifferent to the harassment. (ECF No. 12 at 11–12.) The Court agrees.

Deliberate indifference occurs where the defendant's "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 260 (6th Cir. 2000) (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999)). It arises when "school officials are aware of the misconduct but do nothing to stop it, despite [the school district's] ability to exercise control over the situation." *Horner v. Ky. High Sch. Athletic Assn.*, 206 F.3d 685, 692 (6th Cir. 2000). Therefore, "[a] plaintiff falls short of showing deliberate indifference where the school's disciplinary and remedial responses were reasonably tailored to the findings of each investigation." *Gordon v. Traverse City Area Pub. Sch.*, 686 F. App'x 315, 324 (6th Cir. 2017).

N.F.'s claim fails for two reasons: (1) Plaintiff does not provide admissible evidence that N.F.'s injuries occurred because of his disability; and (2) it is undisputed that the school board quickly investigated and responded each time N.F. was injured.

First, N.F.'s father's affidavit does not contain admissible evidence casually connecting his injuries to his disability. The sole source of evidence before the Court for this claim is an affidavit from N.F.'s father. The affidavit makes two statements to establish causation: "N.F. often came home from school upset and told me that he was being picked on at school for being small and because he wore a diaper"; "N.F. told me that he was injured because other kids pick on him for being small and wearing a diaper." (Fox Decl. ¶¶ 6, 7.) The statements are hearsay under Federal

Rule of Evidence 801 because they describe N.F.'s out of court statements to his father and are offered for their truth—that other students bully N.F. because of his disability. Plaintiff does not argue an admissible basis for these hearsay statements under Federal Rule of Evidence 803, i.e. excited utterance, present sense impression. It is well established that courts cannot consider hearsay statements unless there is an admissible basis. *See Tranter v. Orick*, 460 F. App'x 513, 514 (6th Cir. 2012) ("a court may not consider hearsay when deciding a summary judgment motion" absent an admissible basis).

Even if the statements were not hearsay, they are inadmissible as conclusory statements. N.F.'s father states that his son was injured "because" he was disabled. This language tracks the language of the statute requiring that a disabled student show he was harassed "by reason of his disability." *See* 42 U.S.C. § 12132. A lay witness, such as N.F.'s father, cannot simply offer a conclusory statement or his opinion as to whether N.F. was harassed by reason of his disability. *See United States v. Sheffey*, 57 F.3d 1419, 1426 (6th Cir. 1995) ("If an opinion question posed to a lay witness does not involve terms with a separate, distinct and specialized meaning in the law different from that present in the vernacular, then the witness may answer it over the objection that it calls for a legal conclusion."); *Harrah's Ent., Inc. v. Ace Am. Ins. Co.*, 100 F. App'x 387, 394 (6th Cir. 2004) ("It is well settled that courts should disregard conclusions of law (or 'ultimate fact') found in affidavits submitted for summary judgment.") (citations omitted). Instead, N.F. must show some evidence of harasser's motivation. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge [and] set out facts that would be admissible in evidence. . ."). Plaintiff N.F. does not provide an evidentiary basis for the conclusory statements. Therefore, despite viewing the record in N.F.'s favor, he has not created a genuine issue of material fact as to whether he was bullied because of his disabilities.

Second, N.F.'s claim fails because the limited record indicates that the school immediately responded to each injury in a manner that was not clearly unreasonable. In first grade, N.F. broke his arm at recess. Neither party provides a description of the incident. In fact, Plaintiff does not contend that N.F. was deliberately injured by another student or that it was related to his claim of disability. (*See* Fox Decl. ¶ 9.) As soon as a staff member realized N.F. was injured, she brought him to the nurse. On March 12, 2018, when another first grader pushed N.F. and caused him to hit his head against a wall, a staff member disciplined the student by making him walk the line for the entire recess that day and the following day. On March 16, 2018, when N.F. and other first-grade students were hitting each other, the school disciplined the students, notified N.F.'s guardian of its response, and told N.F.'s father they would watch him more closely during recess. On September 19, 2018, when N.F. received a bloody nose on the playground from playing with another student, the school nurse responded immediately and the school interviewed other students in the area and determined it was an accident.

Plaintiff does not dispute that the school acted as described above, but instead argues that the school was deliberately indifferent because it did not provide him with a personal aid during class transitions and recess. The Court is unpersuaded. Schools are not liable for failing to act in a specific way unless failure to do so was "clearly unreasonable in light of known circumstances." *See Vance*, 231 F.3d at 261 (finding that a school is not deliberately indifferent for using the same efforts to remediate over and over again unless those methods were ineffective). As detailed above, each time a student injured N.F., the school disciplined the student in a manner proportionate with that student's conduct. *See Gordon*, 686 F. App'x at 324 (finding no deliberate indifference where the school investigated the plaintiff's complaints and "meted out punishment commensurate with its findings"). There is no evidence that students injured N.F. again after the student was

disciplined. Although N.F. was repeatedly injured on the playground, the defendant responded immediately, conducted an investigation, and imposed measures. Thus, the school did not have reason to believe its actions were ineffective at stopping harassment. Because the school's responses were individually tailored to each incident and the school did not have reason to believe its responses were ineffective, no reasonable jury could find that the responses clearly unreasonable. Defendant is entitled to summary judgment on Plaintiff N.F.'s ADA and Rehabilitation Act claims.

**b. Plaintiff R.S.**

Defendant argues that it is entitled to summary judgment on Plaintiff R.S.'s ADA and Rehabilitation Act claims because there is insufficient evidence that Plaintiff R.S. was bullied based on her disabilities, the harassment was sufficiently severe or pervasive that it altered the condition of her education and created an abusive educational environment, or that the school was deliberately indifferent to the bullying. (ECF No. 13 at 9-11.) Again, the Court agrees.

From the limited record before the Court, there is insufficient evidence that the school was deliberately indifferent. *Gordon v. Traverse City Area Pub. Schs.*, 686 F. App'x 315 (6th Cir. 2017) is instructive. In that case, the plaintiffs reported four specific incidents of harassment, to which the Court found the schools reasonably responded to, and then stated that they reported additional "bullying" "at least ten times" to the school counselor and principal. *Id.* at 325. The Sixth Circuit found that the vague allegations of additional bullying were insufficient to create a genuine issue of fact as to deliberate indifference because the Court could not determine the reasonableness of the school's responses:

> [The school] responds that even if [Plaintiffs] reported additional harassment, [their] evidence regarding the school's response to too vague to support a finding of deliberate indifference under *Vance.* We agree with [the school]. [Plaintiffs] offer no details on the nature of this additional harassment, when it occurred, or

> how [the school] responded. Because the deliberate-indifference inquiry turns on the "nature of the harassment," its length, and the school's "overall response," *Stiles*, 819 F.3d at 850–51, these missing pieces doom his case. On this record, no reasonable jury could find [the school's] (unknown) response to (unspecified) harassment "clearly unreasonable."

*Id.*

Here, Plaintiff R.S.'s descriptions of harassment are even more vague. R.S.' grandmother states one specific incident of harassment—the October 25, 2019 bus incident. (*See generally* Withrow Decl., ECF No. 20-1.) Beyond that, she states that R.S. "consistently complained to [her] that she was being bullied by other students who called her retarded." (*Id.* ¶ 5.) R.S.'s School Case Manager, the District Secretary, and the Principal "acknowledged to [her] that [they] were aware that R.S. was being bullied because of her intellectual disabilities." (*Id.* ¶¶ 6, 7, 8.) R.S.'s grandmother notified school administrators "on multiple occasions" that R.S. was being bullied because of her disability. She "called various administrative offices to complain about the bullying" and "provided medical records to the school." (*Id.* ¶¶ 9–10.)

These statements generally allege that there was additional harassment beyond the October 25, 2019 school bus incident but do not supply the severity or frequency of harassment or the school's response to the harassment. R.S.'s grandmother claims that she saw three Facebook videos in which A.R. had bullied other kids on the bus, but those videos were not submitted to the Court. Without more, the Court cannot determine whether the school's actions were clearly unreasonable in light of what it knew. *Gordon*, 686 F. App'x at 325. Plaintiff R.S., as the nonmoving party, has failed to "set forth specific facts" of her harassment "showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)).

As for the single specific harassment, the October 25, 2019 school bus incident, no reasonable jury could find that the school's response was clearly unreasonable in light of known

circumstances. Plaintiff does not dispute that the school took the following actions: the school immediately told A.R., the bully, that she could not ride the bus the following school day; the school held a due process hearing and A.R. was given a 10-day out-of-school suspension; the school expelled A.R. from riding the bus the rest of the school year; the school revised R.S.'s safety plan to prevent a similar incident from occurring in the future. (Edwards Decl. ¶¶ 14–19, ECF No. 13-1.) Viewing these facts in the light most favorable to R.S. and drawing all reasonable inferences in her favor, no reasonable jury could find that the school refused to act or was deliberately indifferent to incident. *Davis*, 526 U.S. at 648. Defendant is not entitled to summary judgment on Plaintiff R.S.'s ADA and Rehabilitation Act claims.

**2. *Monell* claim under 42 U.S.C. §1983**

A municipality or school board may be held liable under Section 1983 for customs or policies that violate constitutional rights. *Monell v. Dept. of Social Serv.*, 436 U.S. 658, 690–91, 94 (1978). A school board's customs or policies can take the form of (1) official policy or legislative enactment, (2) decisions or ratifications of final decision makers, (3) inadequate training or supervision, or (4) a custom of acquiescence to or tolerance of rights deprivations. *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019). To bring a *Monell* claim, Plaintiffs must establish the existence of a school board custom or policy, a constitutional violation, and a causal link between the two. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

Plaintiffs argue that the school district had a custom of acquiescence to or tolerance of peer-on-peer harassment towards students with disabilities. (ECF No. 20 at 10–11.) The Sixth Circuit has stated that a plaintiff must establish to following elements to pursue a municipal liability claim under an "inaction" theory:

(1) the existence of a clear and persistent pattern of peer-on-peer harassment based on disabilities;

(2) notice or constructive notice on the part of the school;

(3) the school's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and

(4) that the school's custom was the "moving force" or direct causal link in the constitutional deprivation.

*Doe v. Claiborne Cty., Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996) (citing *City of Canton v. Harris,* 489 U.S. 378, 388–89 (1989)).

Defendant is entitled to summary judgment because Plaintiffs cannot meet the third element—deliberate indifference. *See City of Canton,* 489 U.S. at 389. As discussed above in Part III.B.1., the record does not establish that the school board, as an official policymaking body, had a "permanent and well settled" "custom" that reflected a deliberate, intentional difference to the disability harassment of its students. *See Monell,* 436 U.S. at 691. The eight affidavits Plaintiffs submitted also do not establish a custom or policy of inaction towards bullying based on disabilities because none of the affidavits is related to children with disabilities. (*See* ECF No. 20-1.) Defendant is entitled to summary judgment on Plaintiffs' *Monell* claims.

**3. Negligence/Gross Negligence Claims**

Under Ohio law, a plaintiff asserting a negligence claim must show: 1) the defendant owed him a duty; 2) that duty was breached; 3) and that breach proximately caused plaintiff's injury. *Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 358 (6th Cir. 2014) (citing *Titus v. Dayton Bd. of Educ.*, No. 17920, 2000 WL 84649, at *2 (Ohio Ct. App. 2000)).

Defendant claims statutory immunity from Plaintiff's state law claims under Ohio's Political Subdivision Tort Liability Act. The Act states that political subdivisions are not liable for

damages in tort actions for any injuries or losses caused by any act or omission of the political subdivision or its employees. Ohio Rev. Code § 2744.02(A)(1).

One exception to immunity occurs where the school or employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner. Ohio Rev. Code § 2744.03(A)(6). Ohio courts have defined these terms as follows:

> " 'Malice' is the willful and intentional design to do injury or the intention or desire to harm another, usually seriously, through conduct which is unlawful or unjustified. * * * 'Bad faith' involves a dishonest purpose, conscious wrongdoing, the breach of a known duty through some ulterior motive or ill will, as in the nature of fraud, or an actual intent to mislead or deceive another. * * * [W]anton misconduct is the failure to exercise any care whatsoever. * * * [M]ere negligence is not converted into wanton conduct unless the evidence establishes a disposition to the perversity on the party of the tortfeasor. Such perversity must be under such conditions that the actor must be conscious that his conduct will, in all likelihood, result in an injury.' " * * * '[R]eckless' conduct refers to an act done with knowledge or reason to know of facts that would lead a reasonable person to believe that the conduct creates an unnecessary risk of * * * harm[, and] that this risk is greater than that necessary to make the conduct negligent.

*Thornton v. Summit County Children Serv. Bd.*, No. 23490, 2007-Ohio-4657 ¶¶ 11–12 (Ohio App. Ct. 2007) (citations omitted).

Plaintiffs argue that Defendant is not immune because it showed discriminatory intent by failing to follow the school's harassment policy. (ECF No. 20 at 10.) Plaintiffs do not, however, submit the school's harassment policy or provide any evidence of how the school failed to follow its policy. Plaintiffs cite *Shively v. Green Loc. Sch. Dist. Bd. of Educ.*, 579 F. App'x 348, 357 (6th Cir. 2014) in support. In that case, the Sixth Circuit found the school district was not entitled to state-law immunity at the motion to dismiss stage because the plaintiff adequately pled facts alleging that the school district made a deliberate decision not to enforce school policies against bullying. Here, however, at the motion for summary judgment stage, Plaintiffs did not provide sufficient evidence that the school was deliberately indifferent to R.S. and N.F. Therefore,

Defendant is entitled to statutory immunity from Plaintiffs' negligence and gross negligence claims.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's Motions for Summary Judgment (ECF Nos. 12, 13). This Clerk is directed to close this case.

**IT IS SO ORDERED.**

**5/16/2022**
**DATE**

**s/Edmund A. Sargus, Jr.**
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**